UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MOUSSA BABAGANA,

    Petitioner,

v.

PEOPLE OF THE STATE OF NEW YORK,

    Respondent.

**DECISION AND ORDER**

6:21-CV-06447 EAW

---

## I.   INTRODUCTION

Moussa Babagana ("Petitioner") filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. 1).[1] Petitioner challenges the constitutionality of the judgment entered against him on March 31, 2016, in New York State Supreme Court, Erie County (Michalski, A.J.) ("trial court"), following his guilty plea to two counts of second-degree criminal possession of a weapon (New York Penal Law ("P.L.") § 265.03(3)), a class C felony.[2] For the reasons below, the petition is dismissed as untimely.

---

[1]   Page citations to Petitioner's and Respondent's pleadings are to the pagination automatically generated by the Court's case management and electronic filing system (CM/ECF) and located in the header of each page.

[2]   Petitioner filed the petition while he was in the custody of the New York State Department of Corrections and Community Supervision, serving his sentence on the March 31, 2016 judgment of conviction. (*See* Dkt. 1 at 18). He was released to parole supervision on September 22, 2021. *See* https://nysdoccslookup.doccs.ny.gov/ (results for DIN 16B1060 (last accessed July 8, 2024)). As required by this District's Local Rules of Civil Procedure, Petitioner timely updated the Court with his new address. (Dkt. 4).

## II. BACKGROUND

### A. Indictment and Suppression Motion

On February 6, 2015, an Erie County grand jury returned an indictment charging Petitioner with second-degree criminal possession of a weapon in violation of P.L. § 265.03(3) (possession of a loaded firearm not at his home or place of business) (count one); failure to obey a stop sign in violation of Vehicle & Traffic Law § 1172(a) (count two); and second-degree criminal possession of weapon in violation of P.L. §§ 265.03(3), 265.02(1) (felonious possession of a loaded firearm) (count three). (*See* Indictment, Respondent's Exhibit A ("Resp't Ex. A")).[3] Count one was based on the seizure of a .25-caliber semi-automatic pistol recovered near the vehicle Petitioner was driving on September 12, 2014, in the City of Buffalo; count two was based on the seizure of a .380-caliber semi-automatic pistol following the execution of a search warrant at Petitioner's home on September 30, 2014. (*Id.*).

Petitioner brought a motion to suppress the weapon at issue in count one, arguing that the preceding traffic stop was illegal and that the subsequently seized weapon must be suppressed as the "fruit of the poisonous tree." (*See* Petitioner's Motion to Suppress, Resp't Ex. A). The prosecution conceded the traffic stop was illegal but argued that the

---

[3]   Respondent's Exhibit A consists of the Erie County District Attorney's Office's file in Petitioner's case and the state court transcripts. Respondent's Exhibits B through D (the briefs and orders in connection with Petitioner's direct appeal and motion to vacate the judgment) are contained in a separately bound appendix. Respondent filed Exhibits A through D manually on January 20, 2022.

"attenuation doctrine" rendered the search and seizure of the weapon lawful. (*See* Prosecution's Opposition, Resp't Ex. A).

The trial court conducted a suppression hearing on July 28, 2015. (*See* July 28, 2015 Arraignment and Hearing Transcript, Resp't Ex. A). At the hearing, one of the arresting officers testified that during the September 12, 2014 traffic stop, Petitioner refused to produce his identification and instead drove away at a high rate of speed. (*Id.* at 7-10). The officer and his partner pursued Petitioner, who ran a stop sign, drove over the sidewalk into a vacant field, and crashed his car into a tree. (*Id.* at 11-14). After his car came to rest, Petitioner jumped out and fled on foot but was apprehended about ten feet away. (*Id.* at 14). The officers discovered a loaded semi-automatic pistol a few feet from the driver's side door of Petitioner's car, in the path of flight. (*Id.* at 14-15).

On October 26, 2015, the trial court issued a written decision and order denying the motion to suppress. (*See* October 26, 2015 Order, Resp't Ex. A). The trial court found that any taint from the illegal traffic stop was dissipated by Petitioner's subsequent flight and other illegal conduct, which provided the officers with reasonable cause to search him and the general area where his car stopped. (*Id.* at 6-7).

B.   **Plea and Sentencing**

On December 7, 2015, Petitioner appeared with counsel before the trial court and entered a guilty plea to two counts of P.L. § 265.03(3) in satisfaction of the indictment. (Transcript of December 7, 2015 Plea Hearing at 2, Resp't Ex. A). Petitioner also agreed to waive his right to appeal. (*Id.*). The trial court informed Petitioner that as a second violent felony offender, he faced a minimum of seven years' imprisonment and a maximum

- 3 -

of 15 years' imprisonment on each conviction, which could be set to run consecutively, plus concurrent terms of five years' post-release supervision on each count. (*Id.* at 2-3, 5). The trial court accepted Petitioner's guilty plea and allowed him to remain on bail pending sentencing. (*Id.* at 7-8, 9).

On March 31, 2016, the parties appeared for sentencing. (Transcript of March 31, 2016 Sentencing Hearing, Resp't Ex. A). The trial court sentenced Petitioner to concurrent seven-year determinate terms of imprisonment and concurrent five-year terms of post-release supervision. (*Id.* at 6).

### C. Direct Appeal

Represented by new counsel, Petitioner appealed to the Appellate Division, Fourth Department, of New York State Supreme Court ("Appellate Division"). (Petitioner's Appellate Brief, Resp't Ex. B). Petitioner argued that he did not knowingly and voluntarily waive his right to appeal, that the trial court erroneously denied the suppression motion, and that defense counsel was ineffective in failing to obtain the video recordings from the police officers' dashboard and body cameras and use them to challenge the traffic stop. The Appellate Division unanimously affirmed the conviction on October 4, 2019, holding that the appellate-rights waiver was valid and that the ineffectiveness claim did not survive the guilty plea or the waiver of appellate rights. *People v. Babagana*, 176 A.D.3d 1627, 1627 (4th Dep't 2010). The New York Court of Appeals denied leave to appeal on December 4, 2019. *People v. Babagana*, 34 N.Y.3d 1075 (2019).

D.    **Motion to Vacate the Judgment**

While his direct appeal was pending, Petitioner filed a *pro se* motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 ("440 motion") on March 26, 2019. (440 Motion and Exhibits A through I, Resp't Ex. D). Petitioner argued that defense counsel was ineffective for failing to call an "exculpatory witness" (i.e., the passenger in his vehicle at the time of the traffic stop, Ricky Foots ("Foots"))[4] at the suppression hearing, failing to obtain the felony complaint to impeach the arresting officer and challenge the chain of custody for the weapon, failing to investigate the police cameras at the intersection where he allegedly ran the stop sign, failing to rebut the prosecution's attenuation argument, failing to file a motion to dismiss based on Foots's statements taking responsibility for the gun, and failing to disclose that he (defense counsel) was "in talks" with the Erie County District Attorney's Office

---

[4]    On February 6, 2015, the prosecutor sent a letter to Petitioner's attorney stating that Foots had appeared at the Erie County District Attorney's Office pursuant to a grand jury subpoena on January 20, 2015. (*See* Exhibit E to 440 Motion, Resp't Ex. D). Prior to being called before the grand jury, Foots told the prosecutor that the gun recovered after the September 12, 2014 traffic stop was his gun and that he had it in his pocket that day. (*Id.*). The prosecutor then confronted Foots with the laboratory results excluding him as a contributor to the DNA found on the gun, as well as his statement to police immediately after his arrest ("When I saw your lights, I asked my mans [sic], are you good? And he said, 'Nah man.'"). (*Id.*). At that point, Foots elected to wait for his attorney before speaking further with the prosecutor. (*Id.*). After his attorney arrived, Foots was read the *Miranda* warnings. (*Id.*). Foots refused to answer any questions about the gun recovered on September 12, 2014. (*Id.*). Foots stated he would not testify for the defense that the gun was his; nor would he testify for the prosecution that he did not know the gun was in Petitioner's vehicle. (*Id.*). The record does not contain any other information about Foots or the disposition of any criminal case against him.

regarding a job offer. The prosecution opposed the 440 motion. (*See* Prosecution's Affidavit, Resp't Ex. D).

The trial court declined to hold a hearing and denied the motion in a written decision and order dated July 8, 2019. (440 Order, Resp't Ex. D). The trial court addressed each of Petitioner's contentions and concluded they were meritless. (*Id.* at 2-4). There is no documentation in the state court records indicating that Petitioner filed an application for leave to appeal to the Appellate Division.

### E.   Federal Habeas Petition

Petitioner filed this *pro se* habeas petition, raising the following grounds for relief: (1) the guilty plea was involuntary because the trial court's colloquy regarding the waiver of appellate rights was insufficiently specific ("Ground One") (Dkt. 1 at 6); (2) the conviction was based on evidence obtained pursuant to an unconstitutional search and seizure because the police lacked reasonable suspicion to stop Petitioner's vehicle ("Ground Two") (*id.* at 7); and (3) defense counsel was ineffective for failing to "conduct a reasonable investigation and set forth [a] reasonable defense to the charge," failing to use any of the dashboard or body camera videos, failing to investigate whether there was video footage from police cameras located near the intersection that would have exonerated him of the traffic violation, and failing to preserve Petitioner's right to a direct appeal ("Ground Three") (*id.*).

Respondent filed an answer (Dkt. 6) and memorandum of law (Dkt. 7). Respondent argues that the petition is untimely (*id.* at 8-9) and that, in the alternative, it does not raise any grounds that warrant habeas relief (*id.* at 10-21). Petitioner did not file a reply.

### III. JURISDICTION

#### A. "In Custody" Requirement

A federal court's jurisdiction to consider a petition for a writ of habeas corpus is limited to petitions filed on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(a)'s "jurisdictional requirement has two components—'custody' that arises 'pursuant to the judgment of a state court' that is under attack." *Piasecki v. Ct. of Common Pleas, Bucks Cnty., PA*, 917 F.3d 161, 165-66 (3d Cir. 2019) (quoting 28 U.S.C. § 2254(a)). The fact that a petitioner's sentence expires while the petition is pending does not affect subject matter jurisdiction so long as the petitioner was "'in custody' when the application for habeas corpus [was] filed." *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).

As noted above, at the time he filed the petition, Petitioner was incarcerated and serving the sentence imposed on the judgment of conviction he attacks in the petition. Therefore, he meets § 2254(a)'s "in custody" requirement.

#### B. Mootness

Article III, Section 2 of the United States Constitution limits the subject matter of the federal courts to cases that present a "case or controversy." *Spencer v. Kemna*, 523 U.S. 1, 7 (2002). "[T]o satisfy the case-or-controversy requirement, a party must, at all stages of the litigation, have an actual injury, which is likely to be redressed by a favorable judicial decision." *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999). "Unlike the 'in custody' requirement, mootness is not fixed at the time of filing but must be

considered at every stage of the habeas proceeding." *Nowakowski v. New York*, 835 F.3d 210, 217-18 (2d Cir. 2016).

"A criminal case does not necessarily become moot when the convict finishes serving the sentence." *Mercurris*, 192 F.3d at 293. As long as "there exists 'some concrete and continuing injury' or 'collateral consequence' resulting from the conviction," *id.* (quoting *Spencer*, 523 U.S. at 7), "the case will remain a live case or controversy," *id.*

Because Petitioner challenges the validity of his underlying felony convictions, collateral consequences are presumed to exist, regardless of Petitioner's detention status. *See, e.g., Burch v. Millas*, 663 F. Supp. 2d 151, 157 (W.D.N.Y. 2009) (where the petitioner challenged the underlying felony conviction that led to his detention, the presumption of collateral consequences existed, notwithstanding the petitioner's completion of his sentence (citing *Spencer*, 523 U.S. at 7-8)). Therefore, the petition presents a live case or controversy.

## IV. TIMELINESS

### A. Statute of Limitations

Petitions brought under the authority of 28 U.S.C. § 2254 are subject to a one-year statute of limitations that begins to run upon the latest of four events:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

>   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Because there will be a "judgment of conviction" in all criminal cases, subsection (A) of § 2244(d)(1) usually governs the commencement of the limitations period for § 2254 petitions. *See Simmons v. United States*, 974 F.3d 791, 798 (6th Cir. 2020) (in the context of habeas petition filed under 28 U.S.C. § 2255, "the one-year period will, as a default, be triggered by Section 2255(f)(1)" since "[t]he 'judgment of conviction' referenced in Section 2255(f)(1) is the only event mentioned in Section 2255(f) that will necessarily occur in every case"); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 815-16 (2d Cir. 2000) (stating that 28 U.S.C. §§ 2254 and 2255 are generally seen as in *pari materia*" and therefore "the reasoning of [cases] in the context of § 2255 petitions applies equally to § 2254 petitions").

"Habeas corpus relief may be sought in excess of one year of a conviction becoming final if the circumstances set forth in 28 U.S.C. § 2244(d)(1)(B)[, ](C)[,] or (D) are present." *Sorce v. Artuz*, 73 F. Supp. 2d 292, 294 (E.D.N.Y. 1999). In addition, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation." 28 U.S.C. § 2244(d)(2).

To determine the date on which an application for post-conviction or other collateral review in state court is "properly filed" for purposes of § 2244(d)(2), the Second Circuit applies the prison mailbox rule, not the state's filing rules. *See Fernandez v. Artuz*, 402 F.3d 111, 114, 116 (2d Cir. 2005) (finding that the petitioner's state *coram nobis* motion was "properly filed" on the date he delivered it to prison authorities for mailing). "[A] state-court petition is 'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures." *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000); *see also Carey v. Saffold*, 536 U.S. 214, 217, 221 (2002) (approving Second Circuit's definition of "pending").

"With regard to filing dates, the Supreme Court and the Second Circuit both appear to consider the date on which a post-trial collateral challenge is filed to be excluded from the limitations period." *Brooks v. Sticht*, No. 20-CV-1108 (JLS), 2022 WL 1190456, at *13 (W.D.N.Y. Apr. 21, 2022) (quoting *Chrysler v. Guiney*, 14 F. Supp. 3d 418, 439 (S.D.N.Y. 2014)). As far as when tolling ends, "[t]he prevailing approach in the Second Circuit is 'not to exclude from the limitations period the date on which a state court files a final judgment resolving the pending motion or petition.'" *Id.* (quoting *Chrysler*, 14 F. Supp. 3d at 439). In other words, the date on which the state court issues its final order counts against the time remaining on the limitations period.

B. **Filing Date of the Petition**

Because Petitioner is unrepresented and incarcerated, he is entitled to application of the prison mailbox rule, which provides that "a *pro se* prisoner's habeas petition is deemed filed at the moment he gives it to prison officials." *Hardy v. Conway*, 162 F. App'x 61, 62

- 10 -

(2d Cir. 2006). The Second Circuit has "never required prisoners to provide affidavits of service to verify when they give their documents to prison officials." *Id.* "Indeed, in the absence of contrary evidence, district courts in this circuit have tended to assume that prisoners' papers were given to prison officials on the date of their signing." *Id.* (collecting cases).

Here, Petitioner signed and dated the petition on June 3, 2021 (Dkt. 1 at 9), and it was postmarked June 7, 2021 (*id.* at 18). With no evidence to the contrary, the Court deems the petition to have been handed over to prison officials, and therefore filed, on June 3, 2021. *See Corrigan v. Barbery*, 371 F. Supp. 2d 325, 328 n.4 (W.D.N.Y. 2005).

    **C.**    **The Petition Is Untimely Under Section 2244(d)(1)(A), and Section 2244(d)(2) Does Not Provide Any Statutory Tolling**

Petitioner has not challenged Respondent's choice of start-date. Under subsection (A), a state conviction becomes "final" when the United States Supreme Court denies an application for a writ of certiorari or when the time to seek certiorari has expired, which is 90 days following the date on which direct review by the state's highest court is complete. *See Gonzalez v. Thaler*, 565 U.S. 134, 140 (2012) ("For petitioners who pursue direct review all the way to this Court, the judgment becomes final at the 'conclusion of direct review'—when this Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the 'expiration of the time for seeking such review'—when the time for pursuing direct review in this Court, or in state court, expires."); U.S. Sup. Ct. R. 13(1).

The New York Court of Appeals denied Petitioner's application for leave to appeal on December 4, 2019, and Petitioner did not seek a writ of certiorari from the Supreme Court. The conviction therefore became final 90 days later, on March 3, 2020. Petitioner had one year from March 3, 2020, or until March 3, 2021, in which to file the instant § 2254 petition. *See, e.g.*, *Ross v. Artuz*, 150 F.3d 97, 103 (2d Cir. 1998) (stating that since statute of limitations applicable to § 2254 and § 2255 petitions is measured in years, "the last day for instituting the [petition] is the anniversary date of the start of the limitations period" (citing Fed. R. Civ. P. 6(a); *Day v. Morgenthau*, 909 F.2d 75, 79 (2d Cir. 1990)). The petition, filed three months after the expiration of the one-year period, is untimely under 28 U.S.C. § 2244(d)(1)(A).

The Court next considers the amount of tolling, if any, available under 28 U.S.C. § 2244(d)(2) based on the 440 motion. The *pro se* 440 motion was signed and dated on March 26, 2019. Typically, that would initiate the period of tolling. *See, e.g.*, *Wilkins v. Kirkpatrick*, No. 06 CIV. 2151 SCRLMS, 2009 WL 3644082, at *9 (S.D.N.Y. Nov. 4, 2009) ("[T]he date the [p]etitioner dated and signed his [C.P.L. § ]440.10 motion and has sworn that he mailed that motion . . . initiates the tolling of the statute of limitations under 28 U.S.C. § 2244(d)(2)."). But the 440 motion was filed over one year before the conviction became final. The statute of limitations therefore had not started running.

The 440 motion was denied by the trial court on July 8, 2019. However, it "did not cease to be pending on that date, because [P]etitioner still was entitled to seek discretionary leave to appeal the denial of that motion, and indeed was required to do so in order to exhaust any of the claims raised therein." *Vincent v. Lape*, No. 07-CV-6007L, 2007 WL

4224198, at *3 (W.D.N.Y. Nov. 26, 2007) (footnote omitted (citing N.Y. Crim. Proc. Law §§ 450.15, 460.10(4))). Since Petitioner did not seek leave to appeal to the Appellate Division, the 440 motion ceased to be pending on August 7, 2019, when the 30-day period for seeking leave to appeal to the Appellate Division expired. *Id.* (collecting cases).

Because the 440 motion ceased to be pending before the statute of limitations started to run, it did not provide any statutory tolling. *See, e.g., Nichols v. Brown*, No. 09 Civ. 6825(NRB), 2012 WL 555043, at *2 n.6 (S.D.N.Y. Feb. 21, 2012) (finding that the petitioner's first C.P.L. § 440.10 motion was "irrelevant for purposes of [28 U.S.C. § 2244(d)(1)]'s limitations period because it was denied prior to the completion of [his] direct appeal and hence prior to the time when the statute of limitations had begun to run").

D. **The Start-Dates in Subsections (B), (C), and (D) Do Not Apply**

Petitioner does not suggest that he was impeded from filing in a timely fashion by any state action, and therefore subsection (B) does not apply. Likewise, Petitioner is not relying on any right made retroactively applicable on collateral review, which means that subsection (C) is inapplicable.

The Supreme Court has noted that subsection (D) applies "if the petition alleges newly discovered evidence . . . ." *McQuiggin v. Perkins*, 569 U.S. 383, 383 (2013). To rely on subsection (D), the petitioner "must be able to show that there is some new 'factual predicate' to his claim that only recently could have been discovered." *Duamutef v. Mazzuca*, No. 01CIV2553WHPGWG, 2002 WL 413812, at *8 (S.D.N.Y. Mar. 15, 2002). ""[T]he question for purposes of Section 2244(d)(1)(D) is not when petitioner received a particular document, but when 'the factual predicate of the claim . . . could have been

discovered through the exercise of due diligence.'" *Romano v. Stanford*, No. 16-CV-5884 (RPK), 2022 WL 1488661, at *12 (E.D.N.Y. May 11, 2022) (quoting 28 U.S.C. § 2244(d)(1)(D)). "[I]f new information is discovered that merely supports or strengthens a claim that could have been properly stated without the discovery, that information is not a 'factual predicate' for purposes of triggering the statute of limitations under § 2244(d)(1)(D)." *Rivas v. Fischer*, 687 F.3d 514, 535 (2d Cir. 2012) (agreeing with its sister circuits that the term "factual predicate," as used in § 2244(d)(1)(D), consists only of the "facts vital to a habeas claim").

The Court has considered whether any of Petitioner's habeas claims rely on a "factual predicate" that could not have been discovered until sometime after his conviction became final. None of them do. Grounds One and Two concern events that occurred prior to, or during the guilty plea. Petitioner clearly was aware of the relevant "factual predicates" during the traffic stop itself and the later guilty plea. *See, e.g.*, *Breeden v. Phillips*, No. 05-CV-1248 (RJD), 2005 WL 1971016, at *3 (E.D.N.Y. Aug. 15, 2005) ("[P]etitioner cannot claim that his challenge to his consecutive sentence was unknown to him. Because these claims are based on petitioner's sentencing on July 16, 1996, section 2244(d)(1)(D) is inapplicable.").

The allegation in Ground Three based on defense counsel's purported failure to preserve his right to a direct appeal is based on an affidavit from counsel dated March 2, 2017, in support of Petitioner's motion to file a late notice of appeal—which ultimately was granted. (*See* Exhibit I to 440 Motion, Resp't Ex. D).

The remaining allegations in Ground Three pertain to defense counsel's alleged failure to investigate and utilize video footage from the arresting officer's dashboard and body cameras and from surveillance cameras near the intersection where Petitioner allegedly ran a stop sign after he fled the traffic stop. Such video footage cannot be "newly discovered" since it would have been created at the time of the crime and could have been obtained earlier through the exercise of due diligence. *See Plato v. Morrissey*, 638 F. Supp. 2d 338, 345 (W.D.N.Y. 2009) ("Where documents [or other evidence] could 'have been obtained earlier through the exercise of due diligence,' a petitioner's procurement of them under a belated FOIL [or other] request does not constitute 'new evidence' under § 2244(b)(1)(D)." (second brackets in original (quoting *Sorce*, 73 F. Supp. 2d at 298))). Petitioner also was present at the suppression hearing where defense counsel allegedly should have used this video footage, meaning that he was aware of counsel's omissions at that time. Thus, Petitioner cannot fulfill the criteria in § 2244(d)(1)(D).

Accordingly, the only potential start-date is found in § 2244(d)(1)(A), and the petition is untimely because it was filed more than a year after Petitioner's conviction became final. The petition must be dismissed unless Petitioner can demonstrate an exception to the limitations period—either that he is entitled to equitable tolling, *Pace v. Diguglielmo*, 544 U.S. 408, 417 (2005); or that he is actually innocent, *McQuiggin*, 569 U.S. at 386.

### E. Equitable Tolling

Section 2244(d)(1)'s limitations period "'is subject to equitable tolling in appropriate cases'—specifically, where the petitioner shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Rivas*, 687 F.3d at 538 (quoting *Holland v. Florida*, 560 U.S. 631, 645, 649 (2010)). It is only "in 'rare and exceptional circumstances' [that] a petitioner may invoke the courts' power to equitably toll the limitations period." *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004) (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (internal quotation marks and citations omitted in original)).

The petitioner bears the burden of establishing extraordinary circumstances and a diligent pursuit of his rights. *See Pace*, 544 U.S. at 418 ("Generally, a litigant seeking equitable tolling bears the burden of establishing [the required] two elements."). Petitioner has not attempted to carry this burden. This Court independently has reviewed the record but can find no basis to conclude that this is one of those "rare and exceptional [cases]," *Menefee*, 391 F.3d at 159, in which equitable tolling is warranted.

### F. Actual Innocence

The Supreme Court has held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, . . . or . . . expiration of the statute of limitations." *McQuiggin*, 569 U.S. at 386. The petitioner must come forward with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," *Schlup v. Delo*, 513 U.S. 298, 324 (1995), and that shows it is "more likely than not

that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Id.* at 327.

Although "[a] claim of actual innocence could provide a basis for excusing [a] late filing even though petitioner pled guilty," *Friedman v. Rehal*, 618 F.3d 142, 152 (2d Cir. 2010), Petitioner has never attempted to show that he is actually, factually innocent of the crimes to which he pleaded guilty. Therefore, he has failed to meet the "threshold requirement," *McQuiggin*, 569 U.S. at 386, of a gateway claim of actual innocence.

## V.   CONCLUSION

For the reasons above, the petition (Dkt. 1) is dismissed as untimely. Because Petitioner has failed to meet the standards in 28 U.S.C. § 2253(c)(1), (2), the Court declines to issue a certificate of appealability. The Clerk of Court is directed to close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   July 22, 2024
         Rochester, New York